# SUPREME JUDICIAL COURT

#### FOR THE

### COUNTIES OF HAMPSHIRE, FRANKLIN AND HAMPDEN, SEPTEMBER TERM 1833, AT NORTHAMPTON.

PRESENT.

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

---

## WILLIAM PARISH et al. versus JOHN STONE.

A contract to pay money, made upon no other consideration than that of equalizing the distribution of the promisor's estate after his decease, is without a sufficient legal consideration, and therefore cannot support an action or found a legal claim.

The donor's own promissory note, payable to the donee, cannot be the subject of a *donatio causâ mortis.*

Where a promissory note is given upon two distinct and independent considerations, and one is a consideration which the law deems valid and sufficient to support a contract, and the other not, the note will be apportioned as between the original parties, or such as have the same relative rights, and the holder will recover to the extent of the valid consideration, and no further; and where the parts of the note are not respectively liquidated and definite, the question, what amount was fouded on one consideration and what on the other, is to be settled by the jury, upcn the evidence.

THIS was an appeal from a decree of the judge of probate for the county of Hampshire, allowing an account presented by the appellee as executor of the last will of Cyprian Parish. The executor claimed in his account, and was allowed, as

Parish<br>v.<br>Store

a debt due to himself, the amount of a promissory note for 600 dollars, signed by the testator, payable in one year after his death. This allowance was objected to by the appellants, who were interested in the testator's estate, and upon the appeal issues were directed for the purpose of trying the executor's right to recover.

Upon the trial, before *Morton* J., it appeared that the appellee was the son-in-law of the testator. The note was proved to have been made to the appellee by the testator, during the testator's last sickness, and, as the evidence tended to show, as well for the purpose of compensating the appellee for certain services he had previously rendered at the request of the testator, as of equalizing more effectually the distribution of the testator's property among his children, than was done by a will, then previously executed, and which was afterwards established. But it did not appear that there was any agreement or understanding of the parties, or any act or declaration of the testator, to designate what part of the aggregate amount of the note was intended to be a compensation for services, and what part to equalize the distribution of the property. Another note was given at the same time to another son of the testator, for the like purpose of equalizing the distribution of the estate, which was not designed, in any respect, to be a compensation for services.

The note to the appellee was made on Thursday, and immediately delivered to the appellee, and the testator continued declining in health from that time until the ensuing Monday, when he died.

The jury were instructed to inquire whether there was any legal consideration for the note, and if so, to what extent; and they found that there was such a consideration, on account of services rendered, to the amount of 115 dollars.

Judgment was to be rendered upon the verdict, and the claim of the appellee allowed, either for the whole of the note, or only for the amount of the legal consideration for it, thus found by the jury, as the Court should direct.

*Bates*, *Dewey* and *Wells*, for the appellants, insisted that the note was shown to be without a legal consideration and therefore void, except for the sum of 115 dollars. *Fink* v.

*Sept. 24th,*<br>1832.

*Cox*, 18 Johns. R. 145 ; 2 Kent's Com. (1st edit.) 355. Had this sum been intended as the consideration for the whole promise, the whole amount claimed by the appellee might be recoverable ; but it is found that the note was given, in part, for the purpose of equalizing the distribution of the testator's estate, which is not a valid consideration.

The note cannot be supported as a *donatio causâ mortis*. *Ward* v. *Turner*, 2 Ves. sen. 431 ; *Tate* v. *Hilbert*, 2 Ves. jun. 111. If a man about to die may give his promissory note without any consideration, for the purpose of distributing his estate, he may in effect make a will of real estate not attested by witnesses, as required by the statute, for the payment of the note may render necessary a sale of his real estate

*L. Strong* and *Forbes* for the appellee. Had there been no consideration for the note, it would nevertheless have been valid as a *donatio causâ mortis*. *Bowers* v. *Hurd*, 10 Mass. R. 427 ; *Hill* v. *Buckminster*, 5 Pick. 394 ; *Amherst Academy* v. *Cowls*, 6 Pick. 432 ; *Snellgrove* v. *Baily*, 3 Atk. 214 ; 1 Roper on Leg. (1st Amer. edit.) 25, 36 ; Swinb. *pt.* 1, § 7 ; Toller, (4th edit.) 233 ; Bac. Abr. *Legacies, A* ; Com. Dig. *Chancery,* 3 Y, 4 ; *Lawson* v. *Lawson*, 1 P. Wms. 441 ; 1 Roper on Leg. (1st Amer. edit.) 32, 36, 37, 41 ; *Wright* v. *Wright*, 1 Cowen, 598.

The note purports to have been given for " value received," and this is *primâ facie* evidence of a valuable consideration. Moreover, the jury have found that there was in fact a valuable consideration to the amount of 115 dollars ; and this is a sufficient consideration for the whole promise, except as against a creditor of the promisor. If there are two considerations for a promise, one valuable, the other not but not illegal, (as in the present case,) and there is no failure of either and no fraud nor mistake, the whole contract may be enforced. At the trial, it was not attempted to show that there had been any failure of consideration, and there being no fraud nor mistake, the damages cannot be reduced. *Amherst Academy* v. *Cowls*, 6 Pick. 432 ; 2 Stark. Evid. (Metcalf's edit.) 280, 282 ; *Pillans* v. *Mierop*, 3 Burr. 1670 ; *Sharington* v. *Strotton*, Plowd. 308 ; 1 Fonbl. 329 ; *Rann* v. *Hughes*, 7 T. R. 350, note ; Chit. Contr. 276 ; 1 Dane's

Abr. 89, 109 ; *Farnsworth* v. *Garrard*, 1 Campb. 38, and note ; *Tye* v. *Gwynne*, 2 Campb. 346 ; *Moggridge* v. *Jones*, 3 Campb. 38 ; *Greenleaf* v. *Cook*, 2 Wheat. 13 ; *Howard* v. *Witham*, 2 Greenl. 393 ; *Barber* v. *Backhouse*, Peake's R. 61 ; *Lewis* v. *Cosgrave*, 2 Taunt. 2 ; *Pikard* v. *Cottels*, Yelv. 56 ; *Bliss* v. *Negus*, 8 Mass. R. 51.

SHAW C. J. delivered the opinion of the Court. This case has been argued for the executor upon three grounds : —

1. Supposing the whole note was intended to equalize the distribution of the testator's property, it may be supported as a contract ;

2. It may be supported as a good *donatio causâ mortis* ;

3. Or, if it cannot be supported upon either of these grounds, as there was in fact a valuable consideration in services, and the promise was entire, and no fraud proved, it is immaterial whether the consideration was adequate or not, any valuable consideration is sufficient to support a promise in a suit between the original parties, and therefore the damages ought not to be apportioned, and the appellee is entitled to recover the whole.

1. As a contract, it appears to us quite impossible that the promisee could support an action, or sustain a legal claim.

It is now well settled, that to support a promise or other contract, not under seal, as a contract binding in law, there must be a legal consideration ; and in the application of this rule it is quite immaterial whether the contract be by parol or in writing. The law however attributes so much force and effect to the formal written contract, and to the words " value received," as to presume, in the absence of proof, that there was a valuable consideration for the promise ; and if the promisor would avail himself of the defence, that it was without consideration, it lays the burden of proof upon him, satisfactorily to show that. But when the facts are disclosed, the burden of proof comes to be of little importance. It has therefore been the established rule of law, that in a suit upon a promissory note, against the promisor, by the promisee, or by an indorsee, without value given, or taking the note under such circumstances as to enable him to stand only upon the rights of the promisee, it is competent for the promisor

*Parish*
*v.*
*Stone.*

*Sept. 24th,*
*1833.*

Parisn
v.
Stone.

to show by way of defence, that the promise was gratuitous, and made without any legal consideration. *Bliss* v. *Negus*, 8 Mass. R. 46 ; *Hill* v. *Buckminster*, 5 Pick. 393. A contrary doctrine was laid down in *Bowers* v. *Hurd*, 10 Mass. R. 427 ; but it has frequently been stated, and by the judges who decided it, that although the decision of that case might well be supported, yet that the position there laid down, that a written contract could be supported without a legal consideration, could not be maintained. It was so intimated in *Mills* v. *Wyman*, 3 Pick. 208, but more distinctly in *Hill* v. *Buckminster* already cited, in which the same eminent judge who gave the opinion in that case, says, " In coming to this conclusion we undoubtedly overrule some of the expressions in the opinion, as reported, in the case of *Bowers* v. *Hurd*." The Court then distinctly lay down the principle, that notwithstanding the formality of a note or written promise, and the deliberation with which it may be presumed to have been made, still if it appear to have been made gratuitously, and without a legal consideration, though it may be binding *in foro conscientiæ*, it will not support an action ; and further, that the common admission of " value received " is not conclusive, but may be inquired into, and contradicted by evidence.

Such being the clear rule of law, it follows that a contract to pay money, founded upon no other consideration than that of equalizing the distribution of one's estate, after his decease, is merely gratuitous ; it is *nudum pactum*, given upon no sufficient legal consideration, and therefore cannot support an action or found a legal claim.

The rule being clear and well settled by authorities, it is not necessary to support it by a reference to the principle upon which it is founded. But as it appears sometimes to operate harshly and to defeat the intentions of those who have a right to dispose of property as they please, it may afford some satisfaction, to consider the importance of making and preserving a broad distinction between the claims of legatees and others, who rest their claims upon the bounty of the testator, and creditors who have demands upon his justice, which are in their nature paramount. The law in a variety of ways, and

upon the most satisfactory grounds, secures to creditors a preference. Indeed a holder of property, dying, can hardly be said to be the owner, beyond the balance which will remain· after satisfying the demands of creditors. But if the holder of a gratuitous note can set it up as a legal claim, it would be extremely difficult to apply the rules of the law to his case, which are made for the purpose of preserving the distinction between volunteers and creditors. He would claim as a creditor, upon his contract ; and if such a promise is allowed to have the character and effect of a contract, it is difficult to perceive upon what ground such a promisee could be prevented from recovering, either at law or before commissioners of insolvency, and coming in upon an equal footing with other creditors. And as to the circumstance, that in a particular case the intent of the owner of property may be defeated, it seems to be a perfect answer, that an owner of property has only to put his intent in the form of a bequest, and it will be carried into effect, as far as it can be· consistently with the paramount claims of creditors and others, founding their claims upon legal contracts. To permit a bequest or voluntary gift to be made in the form of a binding and obligatory contract, conferring as they do, very different rights, and calling for different remedies, will seldom be resorted to for any useful or proper purpose, and would tend to a confusion and uncertainty of rights, extremely inconvenient in practice. And the adaptation of a general rule to practical utility and certainty, affords a very strong reason for adopting and adhering to it.

2. The next question is, whether the note in controversy ¢an be deemed good as a *donatio causâ mortis.*

It is not necessary to go at large into the consideration of this species of title to property. It is now well settled, that under certain limitations, a gift may be made by one in present contemplation of death, of money or other property capable of passing by delivery ; that to give effect to such a dona· tion, there must be a clear and manifest intention of the owner to give, a subject capable of passing by delivery, and an actual delivery at the time, in contemplation of death ; that such a gift is inchoate and does not become perfect till the death of the donor ; that it is revocable by the donor during his

life, and if he recovers from the sickness or other cause of apprehended death, under which the donation is made, the gift is void. But where there is such a gift and actual delivery, and the expected death of the donor ensues, the gift is complete, and vests the property in the donee, presently, without its vesting in or passing through the executor or admınistrator, and it is liable to be divested only in favor of the creditors of the donor. 2 Kent's Com. (1st edit.) 358.

In the present case there is no doubt of the actual intention of the donor to make the gift, in 'contemplation of death, and of the actual delivery of the promissory note, to the donee, and the death of the donor, all which are essential requisites.

But we think the donor's own promissory note payable to the donee, could not be the subject of such a donation. It was not an existing available promissory note to any one ; it was not a chose in action. We have already seen that it was not a binding contract by the promisor to the promisee ; and if it were, it would be open to another objection as a *donatio causâ mortis*, namely, that it would not .be revocable by the donor. It was simply a promise to pay money, and as such and as a gift of a sum of money, .it wants the essential requisite of an actual delivery. In the case of *Bowers* v. *Hurd*, 10 Mass. R. 429, already cited, the Court, speaking of such a note, say, " We cannot consider it as a *donatio causâ mortis*, as was suggested at the bar, for that must be complete at the time, by a delivery of the thing given."

The necessity of an actual delivery has been uniformly insisted upon, in the application of the rules of the English law to this species of gift. It was, in some measure, from the strict application of this rule, and from the impossibility of making an actual delivery of that species of property, that it was long doubted whether choses in action, that is, bonds, notes, and other securities for money, could, in any way, be the subject of such a gift. In the case of *Ward* v. *Turner*, 2 Ves. sen. 431, where the whole subject was very fully discussed, and where the doctrine of actual delivery was insisted on as indispensable, it was held by Lord *Hardwicke*, that a gift of receipts for South Sea annuities was not a good *donatio*

*causâ mortis*, principally because the property in the stock did not pass by a delivery of the receipts, but a transfer was necessary, which was not made. But it has since been decided, that a delivery of such securities and choses in action, as pass a property to the bearer by delivery, may properly be the subject of this species of gift, where the securities are delivered, as bank notes or specie bills ; *Drury* v. *Smith*, 1 P. Wms. 404 ; lottery tickets ; *Gold* v. *Rutland*, 1 Eq. Cas. Abr. 346 ; and Exchequer tallies ; *Jones* v. *Selby*, Prec. Chan. 300. And there can be no reasonable doubt, that a promissory note payable to bearer, or indorsed in blank, so as to pass by delivery, might also pass by a gift and actual delivery, as a *donatio causâ mortis*.

But whatever doubt may have existed, it has been decided, that as an assignment of a chose in action is now recognised as a good transfer of the equitable interest, and as such equitable assignment is manifested by a delivery over of the bond or other security for money, by a gift of such a bond, accompanied by an actual delivery of the bond, an equitable interest vests in the donee, and the executors of the donor, in whom the legal interest remains, are mere trustees for the donee, and bound to permit the donee to use their names, to enforce the payment of the bond at law. *Snellgrove* v. *Baily*, 3 Atk. 214 ; *Gardner* v. *Parker*, 3 Maddock, 184 ; *Blount* v. *Burrow*, 4 Bro. C. C. 72. And as a confirmation and necessary consequence of this doctrine, it has also been held, that a bond and mortgage may be a good subject of a gift ; that an equitable interest in the money secured by the personal obligation, passes by a gift and delivery over of the security, that the mortgage attends and follows the debt, as an inseparable incident, that although the legal interest in the debt vests in the executor, and that of the mortgaged premises in the heir of the donor, yet in equity they are both to be considered trustees for the donee of the debt or sum of money secured by the mortgage, the executor, to permit the donee to sue in his name on the personal security, and the heir, to convey the mortgaged premises, in security of the debt. *Duffield* v. *Elwes*, 1 Bligh's New Rep. 514 ; *S. C.* under the name of *Dow* v. *Hicks*, 1 Dow & Clark, 1, in the House of Lords.

These cases all go on the assumption, that a bond, note or other security, is a valid subsisting obligation for the payment of a sum of money, and the gift is, in effect, a gift of the money, by a gift and delivery of the instrument that shows its existence and affords the means of reducing it to possession ; all which ingredients are wanting in his own note given by the donor to the donee, without consideration, which is a mere gratuitous promise.

A case has been recently decided in England, which seems to be directly in point. It was assumpsit on a promissory note, payable to a child nine years old, given by a man in advanced age, in an imbecile state, who died a few months after. The action was against the executor of the promisor. It appeared that the maker was intimate with the child's father, and acquainted with the child himself. No consideration was proved. The judge at nisi prius had ruled, that " value received " imported a good consideration, and that the burden of proof was upon the party denying it, and that affection for the child, a friendship for the father, or a desire to avoid the legacy duty, would either of them be a sufficient consideration in point of law. On motion this verdict was set aside for misdirection, and the court in giving judgment say, it was for the jury to find whether the note was given upon any legal consideration ; and that mere friendship or affection, would clearly, according to all the authorities, not establish a sufficient legal consideration. And Ch. J. *Abbott* added, "I am inclined to think, that the desire to avoid the legacy duty would be equally insufficient ; because then the note would not be payable till after the donor's death, which here it might have been, and a promissory note is not good, as a *donatio causâ mortis. Holliday* v. *Atkinson*, 8 Dowl. & Ryl. 163 ; *S. C.* 5 Barn. & Cress. 501. In that case, it having been argued that the note was intended as a gift, and there being no evidence to disprove that view of the case, if the note could have been supported upon that ground, there was no sufficient reason for setting aside the verdict.

We are aware that there is one case having an opposite bearing, that of *Wright* v. *Wright*, 1 Cowen, 598. That case came before the court, on motion, after verdict for the

plaintiff, and under most unfavorable circumstances for the defendants, and the court refused to set aside the verdict. The case is very short, and no authorities are cited, and it seems to have been decided upon the ground, that a chose in action, a valid subsisting obligation for the payment of a sum of money, may be the subject of a good *donatio causâ mortis*, without distinguishing between the donor's own note payable to the donee, being a mere promise to pay a sum of money, and a note or other security for the payment of money, held by the donor against a third person. With the most entire respect therefore for the learned judges who decided that case, we think it opposed to the current of authorities.

3. But another question arises upon this case, which it becomes necessary to consider, and this is, whether as there was a legal and valuable consideration to some extent, in services, performed at the testator's request, and the promise was entire, the note may not be supported upon that ground.

It was argued for the plaintiff, that as between original parties and where the adverse rights of creditors are not in question, the law will not inquire into the adequacy or sufficiency of the consideration, that being left to be adjusted by the parties themselves, and that any legal consideration, of benefit to the promisor, or loss or forbearance on the part of the promisee, will be sufficient to give legal effect to the promise and to maintain an action. This principle is undoubtedly correct, and supported by the authorities.

But the difficulty in applying that rule to the present case, is, that in point of fact, the services were not the consideration ; that is, the moving cause, the determining motive to the testator's promise. If the testator, considering the value and importance of the services, either before or after they were performed, and intending to make a liberal compensation therefor, had promised to give the sum of six hundred dollars therefor, it would be extremely difficult to contend upon the inadequacy of the consideration, that the plaintiff should not recover *March* 21*st* the full sum. If there were any doubt, as to that fact, it should be left to the jury to find whether in truth it was the intention of the testator, to give the note as a compensation for the services. But we are now to take it, that the question

has been so left, and the jury have found, that as to part of the note, the consideration was services, and as to the balance, it was intended as a mortuary gift by the testator, to render the distribution of his estate more equal and just, as he believed, than it would be left by his will, then executed. It being thus left, and the jury having thus found, it is impossible, as suggested in the argument, to reject this part of the verdict as immaterial.

Had the note been taken for two distinct liquidated sums, consolidated, and the consideration had been wholly wanting, or wholly failed as to one, it seems quite clear, that according to well established principles, supported by authorities, the note, as between the original parties, and all those who stand in such relation, as to allow the defence of want of consideration, it would be competent to the Court to apportion the note, and consider it good in part, and void in part, and to permit the holder to recover accordingly.

In Bayley on Bills, (Phillips and Sewall's ed.) 340, and in most other text books, it is laid down, that want or failure of consideration, is a good defence as between immediate parties, or holders without value, either total or *pro tanto*, as the failure goes to the whole, or part of the consideration. *Barber v. Backhouse*, Peake's R. 61. Where there was originally no consideration, for part of the sum expressed in the bill, the jury may apportion the damages ; per Lord *Kenyon*. *Darnell v. Williams*, 2 Stark. R. 166.

That the holder in such case recovers on the note, and not on the original consideration, is rendered manifest by another series of decisions, thereby showing that the note is good *pro tanto*, as a negotiable instrument, upon which a holder by indorsement may sue and recover ; whereas the right to recover upon the original consideration would not be negotiable and would not vest in the holder of the note by indorsement.

It being held that when a bill or note is made without value, or as an accommodation note, this may be shown as a good defence, against the payee ; it is also held as a principle absolutely essential to the currency of bills and notes, that where an indorsee takes a bill for valuable consideration, or derives title though any one who has pa'd value for it, he shall recover to

the amount, notwithstanding it was originally made without value, and as an accommodation bill. It follows as a necessary consequence from these two principles, that where an indorsee of an accommodation bill has taken it for value, but for less than the amount expressed by the bill, there the holder shall recover only to the amount, for which he has given value. *Jones* v. *Hibbert*, 2 Stark. R. 304. In that case the defendant accepted a bill for $415, to accommodate Phillips & Co., who indorsed it to their bankers for value, and became bankrupt; the bankers knew it to be an accommodation acceptance, and their demand against Phillips & Co. was £265 only; it was held that they could only recover the £265, and they had a verdict accordingly.

So where a bill accepted as a gift to the payee is indorsed for a small consideration, the indorser can recover only to that extent. *Nash* v. *Brown*, Chitty on Bills, (5th edit.) 93.

From these cases it is manifest, that the plaintiff recovers on the bill and not on the original consideration; otherwise the right to sue and recover *pro tanto* would not pass to the indorsee by the negotiation of the bill. They therefore establish the proposition, that where the parts of a bill are divisible, making an aggregate sum, and as to one liquidated and definite part there was a valuable consideration, and as to the other part there was no consideration; the bill as such may be apportioned, and a holder may recover for such part as was founded on a good consideration.

But it is contended, that where the parts of the bill are not liquidated, and distinguishable by computation, a different rule prevails, and several English cases are relied on, to show that though the consideration fails in part, the whole bill is recoverable. *Moggridge* v. *Jones*, 14 East, 486; *Morgan* v. *Richardson*, 1 Campb. 40, note; *Tye* v. *Gwynne*, 2 Campb. 346; *Grant* v. *Welchman*, 16 East, 206. In these cases it was held, that where the note was given for an entire thing, and the consideration afterwards failed in part, the whole bill was recoverable, and the defendant was left to his cross action. As where the note was given for a lease and the lease was not completed according to contract; or for a parcel of hams, and they proved bad and unmarketable; or for goods, and they

18 *

were of a bad quality and improperly packed ; or for an ap-
prentice fee, and the apprentice was not kept by his master.

In this respect there seems to be some distinction between
the English decisions and those of New York  In the latter
it was held, that upon a suit between original parties, upon a
note given upon a contract to manufacture casks, the defendant
might go into evidence to show that the casks were unskilfully
manufactured, to reduce the amount of damages.

But without relying upon this difference, we think the Eng-
lish decisions may be well reconciled, by a reference to the
known distinction between failure of consideration, and want
of consideration.

All the cases put, are those of failure of consideration,
where the consideration was single and entire, and went to the
whole note, and was good and sufficient at the time the note
was given, but by some breach of contract, mistake or acci-
dent, had afterwards failed.   There the rule is, if the consid-
eration has wholly failed, or the contract been wholly rescind-
ed, it shall be a good defence to the note.   But if it have par-
tially failed only, it would tend to an inconvenient mode o
trial and to a confusion of rights, to try such question in a suit
on the note, as a partial defence, and therefore the party com-
plaining shall be left to his cross action.   This distinction,
and the consequence to be drawn from it, is alluded to by
Lord *Ellenborough*, in *Tye* v. *Gwynne*, 2 Campb. 346.   He
says, " there is a difference between want of consideration,
and failure of consideration.   The former may be given in evi-
dence to reduce the damages ; the latter cannot, but furnishes
a distinct and independent cause of action."   It seems there-
fore very clear, that want of consideration, either total or par-
tial, may always be shown by way of defence ; and that it
will bar the action, or reduce the damages, from the amount
expressed in the bill, as it is found to be total or partial re-
spectively.   It cannot therefore in such case depend upon the
state of the evidence, whether the different parts of the bill
were settled and liquidated by the parties or not.   Where the
note is intended to be in a great degree gratuitous, the parties
would not be likely to enter into very particular stipulations as
to what should be deemed payment of a debt, and what a gra-
tuity.   The rule to be deduced from the cases, seems to be

this, that where the note is not given upon any one considera-
tion, which whether good or not, whether it fail or not, goes to
the whole note at the time it is made, but for two distinct
and independent considerations, each going to a distinct por-
tion of the note, and one is a consideration which the law
deems valid and sufficient to support a contract, and the other
not, there the contract shall be apportioned, and the holder
shall recover to the extent of the valid consideration, and no
further.   In the application of this principle, there seems to
be no reason why it shall depend upon the state of the evi-
dence, showing that these different parts can be ascertained by
computation ; in other words, whether the evidence shows them
to be respectively liquidated or otherwise.   If not, it would
seem that the fact, what amount was upon one consideration,
and what upon the other, like every other questionable fact,
should be settled by the jury, upon the evidence.   This can
never operate hardly upon the holder of the note, as the pre-
sumption of law is in his favor as to the whole note ; and the
burden is upon the defendant to show, to what extent the note
is without consideration.

Suppose a father proposes upon his son's going into busi-
ness, to aid him by an advance of several thousand dollars, and
for that purpose gratuitously offers him his note for that sum,
but as his son had performed services to the value of a few
dollars, for which no price was agreed, upon giving his note,
the father, intending to cancel and discharge that and all other
claims, takes a general receipt for all services and other dues,
and afterwards, the note not having been negotiated, a suit
should be brought on it, by the payee against the maker, might
not the defendant show the want of consideration by way of
defence *pro tanto ?* and yet the amount must be settled by a
jury, the evidence of the original agreement not distinguishing
between what was payment, and what was gratuity.

On the whole, we are all of opinion, that it was rightly left
to the jury to find what part of this note was given in compen-
sation for services, the evidence showing that all beyond that
was gratuitous.   To the extent of the consideration of the note
for services as found by the jury, judgment is to be entered on
the verdict.